UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS HUDSON,

    Petitioner,                                    Civil No. 04-CV-74001-DT
                                                      HONORABLE PAUL D. BORMAN
v.                                                  UNITED STATES DISTRICT JUDGE

BLAINE LAFLER,

    Respondent,
_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) AND A CERTIFICATE OF APPEALABILITY**

Nicholas Hudson, ("Petitioner"), presently confined at the Muskegon Correctional Facility in Muskegon, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed through counsel Raymond Burkett, Petitioner challenges his conviction for first-degree murder, M.C.L.A. 750.316; M.S.A. 28.548; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b; M.S.A. 28.424(2). For the reasons stated below, Petitioner's application for writ of habeas corpus is **DENIED**.

**I.  BACKGROUND**

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. The Court will adopt the factual findings rendered by the Wayne County Circuit Court in denying Petitioner's motion for a new trial, which are presumed correct on federal habeas review. *See Gilday v. Callahan,* 866 F. Supp. 611, 632 (D. Mass. 1994). [1]

---

[1] *See People v. Hudson,* No. 99-12250, * 2-6 (Wayne County Circuit Court, May 23, 2001)[part of this Court's Dkt Entry # 23].

1

Ivory Harris was shot and killed in front of 14555 Stout Street in Detroit, Michigan on August 19, 1999, just before midnight. The cause of death was a single gunshot wound to the left back of the neck.

Kiahrenishe Ransburg testified that she was renting 14541 Stout Street for Petitioner. Although Petitioner did not live at this location, he visited his children there. On August 19, 1999, Ransburg went to 14541 Stout Street between 9:00 and 9:30 in the evening. Petitioner, his brothers Mark and Percy, his father, and a man identified as "Red" were at the house playing cards. Between 10:00 and 10:30 p.m., Ransburg and Petitioner left the house in his car, Petitioner's brother Mark left in a second car, and his father and brother Percy left in another car. "Red" remained at the house. The others went to Percy Hudson's house on Greenview Street. Ransburg and Petitioner returned to the Stout address between 1:30 and 2:00 a.m. No one was at the house.

Ransburg made several statements to the police. In the first of two statements that she made to the police on October 26th, Ransburg informed the police that she was walking down the street and witnessed Petitioner shoot someone. At trial, Ransburg acknowledged making that statement to the police, but claimed that it was not truthful.

Mary Wilson lived at 14580 Stout Street. Wilson arrived home on August 19, 1999 just after midnight and observed a body in the street. Wilson called the police. Wilson returned to her porch and witnessed three people go up to the victim's body. One of these people took something from the victim's pocket. Wilson believed that "Red" and Jimmy Blue were two of these people. She also saw a black female with a dark complexion standing there. Wilson identified Petitioner as being the man that she referred to as "Red." Wilson testified that she

observed Petitioner standing over the victim's body with a flashlight.

Roy Lee Collier testified that his cousin, Mario Collier, was friends with the victim. On August 19, 1999, he, Mario, and the victim went over to Stout Street. The victim informed the other men that he wanted to see a girl about some money. About fifteen minutes later, the victim was walking towards the car with a television, when a man approached the victim and fired one to two shots. At trial, Collier testified that he did not know the man who shot the victim. Collier was impeached with a statement that he made to the police on November 13, 1999, in which he identified Petitioner as the shooter. At trial, Collier testified that he was not certain that Petitioner was the shooter.

Janet Inge testified that she saw Petitioner and Mark Hudson at her house on 14600 Stout Street at about 5:00 p.m. on August 18, 1999. Petitioner warned her that no one could sell drugs on his street. Inge testified that the victim had previously given her $ 100.00 to allow him to sell illegal drugs out of her house. When Inge informed the victim about Petitioner's warning, the victim demanded his money back. Inge did not have the money. Just before midnight, the victim returned to Inge's house and took her television set. Inge testified that Petitioner shot the victim as he was putting the television into the back seat of a car. Inge testified that Petitioner's brother Percy had threatened to shoot her if she testified.

Jimmy Blue testified that he lived at Janet Inge's house. Petitioner and the victim had a confrontation over the victim selling drugs out of Inge's house. Blue also witnessed the victim take Inge's television set from her. As the victim walked across the street to a car, Blue heard a gunshot. Inge told Blue that she thought that Petitioner had shot someone. Blue observed "Red" and another person approaching the victim's body.

Mario Collier's testimony mirrored that of his cousin, except that he did not identify Petitioner as being the assailant in this case.

William Steiner testified that he analyzed gunshot residue samples taken from Petitioner, Ms. Inge, Mr. Blue, and Ms. Ransburg. Steiner testified that Petitioner had 3 particles of gunshot residue on the right and left web of his hands, while Ms. Ransburg had particles of gunshot residue on her left web and forehead/face. Jimmie Blue, Janet Inge, Mark Hudson, and Janarrio Gardner (also known as "Red") did not have any confirmed gunshot residue. Steiner testified that a person can get gunshot residue on him from shooting a gun, handling a recently fired gun, or touching an object with gunshot residue on it.

Mark Hudson testified as an alibi witness for the defense. He testified that on August 19, 1999, he, his father, "Red", "Black," and Petitioner were on Stout Street playing cards. Ms. Ransburg arrived around 6:30 to 7:00. Mark Hudson, Ransburg, and Petitioner left and went to Percy Hudson's house on Greenview Street, arriving about 9:00 to 9:30 p.m. Mark Hudson and his niece, Crystal, left the Greenview house between 1:00 and 2:00 a.m. and went to Inkster.

Crystal Hudson testified that Petitioner arrived at Percy Hudson's house on August 19, 1999 around 9:00 p.m. Sometime after 1:30 a.m., she, Mark Hudson, and Petitioner left the Greenview residence and went to Inkster.

Petitioner was convicted of the above offenses. Petitioner's conviction was affirmed on appeal. *People v. Hudson,* 228030 (Mich.Ct.App. Nov. 26, 2002); *reh. den.* 228030 (Mich.Ct.App. Jan. 9, 2003); *lv. den.,* 469 Mich. 874; 668 N.W. 2d 150 (2003). Additional facts will be discussed when addressing Petitioner's claims. Petitioner now seeks habeas relief on the following grounds:

4

    I.  The Petitioner received ineffective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution when counsel failed to conduct adequate pre-trial investigation.

    II.  The Petitioner's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution was denied when the prosecutor engaged in misconduct regarding discovery and during closing arguments.

    III.  Petitioner's right to confront witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution was violated.

    IV.  Petitioner is entitled to an evidentiary hearing on these matters.

## II.  STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

    A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

5

## III. <u>DISCUSSION</u>

**A. Claim # 1.  The ineffective assistance of counsel claims.**

Petitioner first claims that he was deprived of the effective assistance of counsel.

*1. Standard of Review*

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*

*2. Failure to adequately counter the prosecution's gunshot residue expert*.

Petitioner first contends that his trial counsel was ineffective for failing to adequately challenge the prosecution's gunshot residue expert, William Steiner, on his findings.  Petitioner argues that counsel failed to obtain Steiner's test results in advance of trial, thus hampering his ability to effectively cross-examine Steiner at trial.  Petitioner further avers that counsel was ineffective for failing to obtain an independent gunshot residue expert to challenge Steiner's findings.

The Michigan Court of Appeals rejected this claim and found that the gunshot residue evidence had not been particularly incriminating, noting that the prosecution's expert admitted

that only small amounts of gunshot residue had been found on Petitioner and his girlfriend and that the amount found on Mark Hudson could not be conclusively attributed to gunfire.  The Michigan Court of Appeals further noted that the prosecution's expert witness admitted that the presence of gunshot residue on a person did not necessarily indicate that the person had discharged a gun, since it was possible for a person to pick up gunshot residue by touching another person who had fired a gun or touching an object that had come into contact with another person who had fired a gun.  The prosecution's expert further indicated that the absence of gunshot residue would not necessarily indicate that the person had not fired a gun, because most residue sheds off a person's hand within two hours, or even earlier if the person washes or rubs his hands. *People v. Hudson,* Slip. Op. at * 2.

The Michigan Court of Appeals further concluded that the trial record demonstrated that Petitioner's trial counsel was able to effectively cross-examine the prosecution's gunshot residue expert despite having received the report only a few hours before he testified, and was able to elicit testimony that gunshot residue was "not a reliable indicator of guilt." *People v. Hudson,* Slip. Op. at * 2.  The Michigan Court of Appeals further found that the testimony of Petitioner's proposed expert at the post-trial hearing on Petitioner's ineffective assistance of counsel claim – namely, that gunshot residue evidence is unreliable because innocent persons can pick up the residue and guilty persons can get rid of it before testing – had already been brought out at Petitioner's trial. *Id.*  The Michigan Court of Appeals' concluded that Petitioner's theory that he picked up the residue from the police car or from handcuffs, or that another suspect had killed the victim using ammunition which does not leave residue, was purely speculative. *Id.*  The Michigan Court of Appeals concluded that Petitioner's counsel was not

7

ineffective in the manner in which he attacked the prosecution's gunshot residue expert.

A review of the trial court record shows that Petitioner's trial counsel effectively cross-examined the prosecution's gunshot residue expert about the limitations of gunshot residue evidence, eliciting admissions from him that a person could pick up gunshot residue without having discharged a firearm, and that a person who actually fired the weapon could get rid of the residue before any testing was conducted. "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). Trial counsel's cross-examination of the prosecution's gunshot residue expert was not deficient, in light of the fact that he elicited admissions from him that any gunshot residue found on a person could have come from handling a gun or being near a gun, and that it did not necessarily mean that the person had fired a gun. *See State v. Riechmann,* 777 So. 2d 342, 355 (Fla. 2000). Because trial counsel's cross-examination of the prosecution's gunshot residue expert was not deficient, Petitioner is not entitled to habeas relief on this portion of his ineffective assistance of counsel claim. *See e.g. Roche v. Anderson,* 132 F. Supp. 2d 688, 707 (N.D. Ind. 2001).

Likewise, counsel's failure to call an independent firearms expert was not ineffective, when counsel was able to elicit the same testimony regarding the limitations of gunshot residue evidence from the prosecution's expert on cross-examination. *See United States v. McGill,* 11 F. 3d 223, 227-28 (1st Cir. 1993). Petitioner's trial counsel was not ineffective in failing to call a firearms expert who would have added nothing to the concessions already elicited by the prosecution's gunshot residue expert. *See Hughes v. United States,* 241 F. Supp. 2d 148, 158 (D.R.I. 2003).

8

### 3. *Failure to call Damia Genia as an alibi witness.*

Petitioner next contends that trial counsel was ineffective for failing to call Damia Genia to testify as an alibi witness. The Michigan Court of Appeals rejected this claim, finding that Genia's proposed testimony would have been cumulative of the other alibi witnesses, whose testimony had been rejected.

In the present case, Petitioner suffered no prejudice from counsel's failure to present additional alibi witnesses, where counsel was able to present a "plausible, if ultimately unsuccessful, alibi defense" through the testimony of other alibi witnesses. *See Hess v. Mazurkiewicz,* 135 F. 3d 905, 909 (3rd Cir. 1998). Because Petitioner's alibi defense was presented through other witnesses, the Michigan Court of Appeals' rejection of Petitioner's ineffective assistance of counsel claim was not unreasonable. *See Chegwidden v. Kapture,* 92 Fed. Appx. 309, 311 (6th Cir. 2004) (unpublished).

### 4. *Failure to exercise peremptory challenges.*

Petitioner next claims that counsel was ineffective for failing to exercise peremptory challenges to remove a juror who had indicated during *voir dire* that four or five of his family members had been murdered and a second juror who stated that she hated all drug dealers.

The Michigan Court of Appeals rejected this claim, noting that the two jurors indicated that they could and would decide the case solely on the evidence presented in court. *People v. Hudson,* Slip. Op. at * 3.

Petitioner has failed to show that he was prejudiced by counsel's failure to use peremptory challenges to remove these two jurors, in light of the fact that these jurors stated that they could be fair and impartial in deciding Petitioner's case. *See Baze v. Parker,* 371 F. 3d

9

310, 318-22 (6th Cir. 2004).  Because Petitioner has failed to show that any of the jurors who sat on his case had an actual bias towards him, he has failed to show that he was prejudiced by counsel's decisions regarding the exercise of peremptory challenges. *See e.g. Tinsley v. Million,* 399 F. 3d 796, 805-06 (6th Cir. 2005).

Accordingly, the Court finds that Petitioner was not deprived of the effective assistance of counsel.

### B.  Claim # 2.  Prosecutorial misconduct.

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct.

Petitioner first contends that the prosecutor violated the discovery order by failing to disclose Jimmie Blue's criminal record to the defense.  Respondent contends that this portion of Petitioner's prosecutorial misconduct claim is procedurally defaulted, because Petitioner failed to preserve the issue at trial.

In rejecting this part of Petitioner's prosecutorial misconduct claim, the Michigan Court of Appeals noted that because Petitioner failed to preserve the issue before the trial court, it would review Petitioner's claim for plain error. *People v. Hudson,* Slip. Op. at * 5.  Because Petitioner failed to raise the issue before the trial court, the Michigan Court of Appeals was unable to determine what discovery materials the prosecutor did or did not supply before trial.  Thus, the Michigan Court of Appeals concluded that Petitioner had failed to establish the requisite plain error needed to overturn his conviction. *Id.*  The Michigan Court of Appeals further held that failure to disclose Blue's criminal record did not violate *Brady v. Maryland*, 373 U.S. 83 (1963), because such evidence would not have been material. *People v. Hudson,*

Slip. Op. at * 5.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless Petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If Petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a Petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, Petitioner had not preserved his prosecutorial misconduct claim. The fact that the Michigan Court of Appeals engaged in plain error review of Petitioner's claim does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of Petitioner's claim for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). In addition, the mere fact that the Michigan Court of Appeals also discussed the merits of Petitioner's claim does not mean that this claim was not procedurally defaulted. A federal court need not reach the merits of a habeas petition where the

last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991). The Court finds that Petitioner's claim is procedurally defaulted.

In the instant case, Petitioner has offered no reasons for his failure to preserve the discovery issue. Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue. *Smith*, 477 U.S. at 533.

Additionally, Petitioner has not presented any new, reliable evidence to support any assertion of innocence which would allow this Court to consider his claim as a ground for a writ of habeas corpus in spite of the procedural default. Because Petitioner has not presented any new, reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declines to review this portion of Petitioner's second claim on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002). This portion of Petitioner's prosecutorial misconduct claim is procedurally barred.

Petitioner next contends that the prosecutor made an improper "civic duty" argument during closing argument, by essentially urging the jury to convict Petitioner based on their fear of Petitioner and in order to support the police.

When a Petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the

challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

With regards to civic or societal duty arguments, the Sixth Circuit has noted that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible." *Byrd v. Collins,* 209 F. 3d 486, 539 (6th Cir. 2000) (*quoting United States v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir. 1991)).

In the present case, as the Michigan Court of Appeals indicated in its opinion, the prosecutor did not make an improper civic duty argument, because the prosecutor's comments were made in response to defense counsel's arguments and reflected the evidence presented at trial. *See Knapp v. White,* 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Additionally, the trial cour's instruction to the jury that they must not let prejudice or sympathy influence their decision [Tr. 4/17/2000, p. 3] defeats Petitioner's claim that he was deprived of a fair trial because of an improper civic duty argument. *Id.* Petitioner is not entitled to habeas relief on his second claim.

### C.  Claim # 3.  The Confrontation Clause/continuance claim.

In his third claim, Petitioner contends that he was denied his right to confrontation when the trial court refused to grant defense counsel a continuance to review William Steiner's gunshot residue report prior to cross-examining him.

In rejecting this claim, the Michigan Court of Appeals found that Petitioner was not prejudiced by any delay in receiving Steiner's report, in light of the fact that the report was not

highly incriminating and counsel was able to effectively cross-examine Steiner. *People v. Hudson,* Slip. Op. at * 7.

In criminal proceedings, a trial court's denial of a continuance rises to the level of a due process constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. *See Burton v. Renico,* 391 F. 3d 764, 772 (6th Cir. 2004); *cert. den.* 126 S. Ct. 353 (2005). In order to obtain habeas relief, a habeas Petitioner must show that the denial of his request for a continuance resulted in actual prejudice to his defense. *Id.; See also Powell v. Collins,* 332 F. 3d 376, 396 (6th Cir. 2003). Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense. *Powell,* 332 F. 3d at 396.

In the present case, denial of a continuance in order to afford Petitioner's counsel additional time to review Steiner's report was not objectively unreasonable, in light of the fact that defense counsel was able to effectively cross-examine Steiner about the gunshot residue tests and obtain favorable admissions from Steiner which had the potential to discredit his conclusions. *See Brown v. O'Dea,* 227 F. 3d 642, 645-46 (6th Cir. 2000). Accordingly, Petitioner is not entitled to relief on his final claim.

## IV.  CONCLUSION

The Court DENIES the petition for writ of habeas corpus, and therefore also DENIES Petitioner an evidentiary hearing on his claims.

The Court also DENIES a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is

required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas Petitioner's constitutional claims on the merits, the Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court DENIES Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *Johnson,* 219 F. Supp. 2d at 885.

## V.   ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**


S/Paul D. Borman
**PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE**

**Dated:  June 8, 2006**

### CERTIFICATE OF SERVICE

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 8, 2006.**

S/Jonie Parker
**Case Manager**

15